ROBERT McCORRISTON *v.* HAROLD C. HILL, TAX ASSESSOR FOR THE FIRST TAXATION DIVISION, TERRITORY OF HAWAII.

No. 1973.

ARGUED JUNE 20, 1931.        DECIDED JUNE 26, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a controversy concerning income taxes submitted to this court under the statute upon agreed facts.

Dorothy Hurd McCorriston, wife of the taxpayer, died in San Francisco, California, on September 13, 1928, leaving a last will which was later duly admitted to probate in the circuit court of the first judicial circuit of this Territory. Appraisers appointed by the probate

court appraised the value of the decedent's estate as of the date of her death at $462,577.96. After due administration the executors were discharged on September 30, 1929, and distributed the trust estate to the trustees named in the will. After making a few specific legacies or gifts the testatrix provided: "all of the rest, residue and remainder of my property, of every nature and description whatsoever and wheresoever the same may be * * * I give, bequeath and devise unto my husband, Robert McCorriston, and Hawaiian Trust Company, Limited, a Hawaiian corporation, and their successors in trust, to have and to hold unto them jointly during the life of the said Robert McCorriston, and upon his death unto said Hawaiian Trust Company, Limited, upon the trusts and with the powers and for the uses and purposes hereinafter stated, namely: (a) to pay the net income of the trust estate to my husband so long as he shall live * * *; (b) upon and after the death of my husband, or upon and after my death in case he shall not survive me, the surviving trustee shall pay the net income of the trust estate unto my daughter, Mary Lou McCorriston, for and during her life;" and "(c) upon and after the death of my said daughter (but after the death of my said husband) the surviving trustee shall pay the net income of the trust estate to her child or children," for a period of time described "and upon the termination of said period * * * the said trustee shall convey, transfer and pay over the corpus and principal of the trust estate unto the child or children of my said daughter." The trustees are given by the will power "to sell, lease, partition, exchange, mortgage, pledge and in any manner deal with and dispose of any of the property of the trust estate" and "to make reinvestments" at their discretion.

The executors filed with the treasurer of the Territory an inheritance tax return in which "the net value

of the trust estate created by the terms of said decedent's will for the purpose of territorial inheritance tax was fixed * * * at $409,855.86." It is stated in the submission that "in assessing the territorial inheritance tax in respect to the transfer of the decedent's net estate, the taxpayer's life interest in said trust estate was capitalized and determined to be of the value of $266,097.65, the life interest in said trust estate of Mary Lou McCorriston * * * was capitalized at $87,425.30 and the remainder of said decedent's trust estate was fixed at a value of $56,332.91. * * * The sum of the capitalized values of the two life estates and the remaindermen's interest in said decedent's trust estate amounted to $409,855.86, which sum added to the amount of specific bequests totaled $415,280.36, representing the taxable value of the decedent's net distributable estate and the tax on the transfer thereof amounted to $9,521.51, which total tax was calculated in manner and form shown by the return and paid by the taxpayer." The net income of the trust estate from October 1, 1929, to December 31, 1929, paid by the trustee to the taxpayer, the plaintiff, amounted to $5,253.26 and was derived from interest on liberty bonds, dividends from Hawaiian corporations, interest on notes and corporate bonds and dividends from mainland corporations. From the sum of $5,253.26 should be deducted nontaxable dividends and interest on United States bonds in the total sum of $407.31, leaving the sum of $4,845.95. The taxpayer filed a territorial income tax return for the year preceding January 1, 1930, in which he disclosed the receipt of the sum of $4,845.95 paid to him by the trustees of the decedent's estate but claimed that that sum was exempt from territorial income tax.

In the case at bar the taxpayer claims that the sum of $4,845.95 so distributed to him by the trustee is not subject to tax under the territorial income tax law for

the reason that, as he claims, the same was subject to an inheritance tax under territorial laws and the assessor claims that the sum named is subject to an income tax and was not taxed under the inheritance tax law. It is stipulated by the parties that if the installment of income named is taxable, judgment shall be entered to the effect that the taxpayer pay an additional income tax of $114.39.

An exhibit attached to the submission and made a part of it shows the correctness of the statement in the submission that what the parties did, in returning and assessing an inheritance tax, was to ascertain by formal appraisal the value of the property left by the decedent and then, proceeding upon the theory that that property would yield a net income of five per cent per annum, to find, by the use of mortality tables and insurance methods, that the present worth of the installments of income (calculated as just stated at five per cent per annum) receivable by the plaintiff during the prospective number of years of life remaining to him (under the mortality tables) was $266,097.65 and that the present worth of the life interest of the daughter, Mary Lou McCorriston (age eight at decedent's death), deferred during the life of the husband, was $87,425.30 and then to subtract the total of the present worth of these two annuities from the total appraised value of the property left by the decedent and to regard the remainder, $56,332.91, as the value of the interest of the remaindermen.

Section 1388, R. L. 1925, provides that "there shall be levied, assessed, collected and paid annually upon the gains, profits and income received by every individual residing in the Territory, from all property owned, and every business, trade, profession, employment or vocation carried on in the Territory, * * * a tax in accordance with" a schedule which is set forth in the statute in de-

tail. Section 1391 contains the proviso that "in assessing the income of any person * * * there shall not be included the amount received from any corporation as dividends * * * nor any bequest or inheritance otherwise taxed as such." The contention of the taxpayer is that the inheritance tax above mentioned was levied upon the income for the twenty-five years of the prospective life of the plaintiff, of which income the sum of $4,845.95 now sought to be taxed under the income tax laws was a part,—in other words that all of the installments of income, including this one, in themselves constituted the bequest which was "otherwise taxed" under the inheritance tax laws. If there were any distinction between that which was in fact taxed and that upon which the tax was imposed by the inheritance tax law, the question would be whether the income now sought to be taxed was subject under the inheritance tax law to an inheritance tax. In the present instance, however, there is no such distinction. As we understand the record the parties correctly applied the provisions of the inheritance tax statute. Section 1400, R. L. 1925, being a part of chapter 104 relating to inheritance taxes, provides that "all property which shall pass by will * * * from any person who may die seized or possessed of the same while a resident of the Territory * * * or which or any interest in or income from which, shall be transferred by deed, grant, sale or gift, made in contemplation of the death of the grantor, * * * or intended to take effect in possession or enjoyment after such death, to any person or persons, * * * in trust or otherwise, or by reason whereof any person * * * shall become beneficially entitled, in possession or expectancy, to any property, or to the income thereof, shall be and is subject to a tax hereinafter provided for. * * * The tax so imposed shall be upon the market value of such property at the rates hereinafter

prescribed. * * *

"When the beneficial interest to any property or income therefrom shall so pass to or for the use of" certain named, favored relatives, "the rate of the tax shall be at the following percentage rate of the market value of such property. * * * In all other cases except aliens and non-residents * * * the rate of tax of the market value of such property * * * shall be * * *. When the beneficial interest to any property or income therefrom shall so pass to an alien or non-resident * * * the rate of tax shall be * * * of the market value of such property received by each person. * * * " The intent discernible from these provisions is that, whether the property itself of the testator or merely its income is devised to a beneficiary, the tax is imposed on the transfer of the principal. It is a tax imposed on the right given by law to the owner to transfer the property, upon his death, to a person of his choice. Another provision confirming this view is contained in section 1402 relating to "Bond to pay" (tax) "on coming into actual enjoyment." The provision is that "when any grant, gift, legacy or succession upon which a tax is imposed by section 1400 shall be an estate, income or interest for a term of years, or for life, or determinable upon any future or contingent event, or shall be a remainder, reversion, or other expectancy, real or personal, the entire property or fund by which such estate, income or interest is supported, or of which it is a part, shall be appraised immediately after the death of the decedent, and the market value thereof determined in the manner provided in section 1412 and the tax prescribed by this chapter shall be immediately due and payable." Here again the thought seems to be that it is the property or fund which yields the income or interest which is to be appraised and taxed. Section 1412 provides that "the value of every future or contingent or limited

estate, income or interest shall, for the purpose of this chapter, be determined by the insurance commissioner, by the rule, method and the standards of mortality and of value that are set forth in the American experience tables of mortality for ascertaining the value of policies of life insurance and annuities and for the determination of the liabilities of life insurance companies, save that the rate of interest to be assessed in computing the present value of all future interests and contingencies shall be five per centum per annum and the commissioner shall certify such value to the appraisers or judge as the case may be." This provision was followed by the parties in the assessment of the inheritance tax.

Upon the facts agreed the case submitted is susceptible of the argument, which has been made, that since the tax at the statutory rates was calculated upon the present worth of all of the installments of income receivable by the taxpayer during his life, the inheritance tax was imposed upon the income itself and, therefore, under section 1391 the income now is not taxable under the provisions of the income tax laws; but aside from our view that the correct construction of the inheritance tax statutes is that the inheritance tax is imposed by law upon the transfer of the principal when the income is named as the gift, the question has been definitely decided, as we think, by the Supreme Court of the United States in the recent case of *Irwin* v. *Gavit* (1925), 268 U. S. 161, 167, 169. In that case the will provided that "the income from a fund in trust should be applied to the education and support of the testator's granddaughter so far as the trustees deemed proper and that the balance of it should be divided into two equal parts one of which should be paid to plaintiff in equal quarter-yearly instalments during his life. On the granddaughter's reaching the age of twenty-one or dying, the fund was to go over, so that,

considering her age, the plaintiff's interest could not exceed fifteen years." It was held that the sums paid to the plaintiff were taxable income within the meaning of the Income Tax Act of October 3, 1913, which taxed "the entire net income arising or accruing * * * to every citizen of the United States" and defined net income as "gains or profits and income derived from any source whatever, including the income from *but not the value of property acquired by gift, bequest, devise or descent.*" The court said: "The language quoted leaves no doubt in our minds that if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute. It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech. In the first case it is true that the bequest might be said to be of the corpus for life, in the second it might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income properly so-called simply because of a severance between it and the principal fund. No such conclusion can be drawn from *Eisner* v. *Macomber*, 252 U. S. 189, 206, 207. The money was income in the hands of the trustees and we know of nothing in the law that prevented its being paid and received as income by the donee." The court further said: "The courts below went on the ground that the gift to the plaintiff was a bequest and carried no interest in the corpus of the fund. We do not regard those considerations as conclusive, as we have said, but if it were material a gift of the income of a fund ordinarily is treated by equity as creating an

interest in the fund. Apart from technicalities we can perceive no distinction relevant to the question before us between a gift of the fund for life and a gift of the income from it. The fund is appropriated to the production of the same result whichever form the gift takes. Neither are we troubled by the question where to draw the line. That is the question in pretty much everything worth arguing in the law. *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355. Day and night, youth and age are only types. But the distinction between the cases put of a gift from the corpus of the estate payable in instalments and the present seems to us not hard to draw, assuming that the gift supposed would not be income. This is a gift from the income of a very large fund, as income. It seems to us immaterial that the same amounts might receive a different color from their source. We are of opinion that quarterly payments, which it was hoped would last for fifteen years, from the income of an estate intended for the plaintiff's child, must be regarded as income within the meaning of the Constitution and the law." Two justices dissented. They said that "the corpus of the estate was not the legacy which respondent received, but merely the source which gave rise to it. The money here sought to be taxed was not the fruits of a legacy; it was the legacy itself." This last is precisely the substance of the contention of the plaintiff. This statement by the minority tends to show that the issue then before the court was precisely the same issue which is now before this court, to-wit, whether the legacy upon which the inheritance tax was imposed was the corpus of the estate or was constituted of the installments of income. It is clear from the opinion of the majority that the fact that the corpus was not expressly devised to the plaintiff for his life, with the right to use and enjoy it and subject to the duty to pass it on to the daughter,

was not material and that the majority regarded the devise as made as being a devise of the beneficial interest in the fund or corpus. It said that it did not regard as conclusive the consideration that the gift to the plaintiff was a bequest and carried no interest in the corpus of the fund. It said in unambiguous language that "apart from technicalities we can perceive no distinction relevant to the question before us between a gift of the fund for life and a gift of the income from it." In our opinion the case is a direct authority and must be followed.

The same reasoning disposes of the remaining contention advanced by the taxpayer that in any event the installments of income under consideration are not taxable under section 1388 because, as it is said, it was not income from property owned *by the taxpayer.* Assuming but not deciding that the true intent and meaning of section 1388 is that the income there referred to "from all property owned * * * in the Territory" must be derived from property owned *by the taxpayer,* the holding that the devise of the income of a fund should be regarded as granting an interest in the fund itself disposes of the contention adversely to the plaintiff, for under that view the income was derived from property owned by the taxpayer.

It is argued on behalf of the plaintiff that if upon the death of the testatrix he had sold his right to the income for his life to another for $175,000 the purchaser would not have been taxable on the early installments of income unless and until the installments received by him should aggregate as much as he had paid for the right; and in support of this argument, *Burnet* v. *Logan,* Advance Sheets, U. S. Supreme Court, page 714, decided May 18, 1931, is cited. Again assuming that under a proper construction of the income tax laws of this Territory the purchaser would not be liable to an income tax on the

income so purchased until he should have received sufficient to compensate him for the purchase price, that would be because he had paid $175,000 for the right. In the case at bar the plaintiff did not pay anything for the right. It cost him nothing and the income that he is receiving is all profit. It may be added that in the hypothetical case under consideration, neither the sale of the right by the plaintiff nor its purchase by the purchaser would render the transfer of the property from the decedent to the plaintiff immune from the inheritance tax.

Judgment will be entered for the defendant in the sum of $114.39.

H. L. Wrenn (Prosser, Anderson, Marx & Wrenn on the briefs) for the taxpayer.

H. T. Kay, Deputy Attorney General (H. R. Hewitt, Attorney General, with him on the brief), for the tax assessor.