CHESTER J. KRANTZ et al., Copartners under the Name of W. & C. KRANTZ LANDSCAPE GARDNERS, Plaintiffs, v. TOWN OF AMHERST et al., Defendants.

Supreme Court, Trial Term, Erie County, July 23, 1948.

*Charles J. Wick* for plaintiffs.

*Allen C. Christman, Matthew Weimar, Henry B. Harrington* and *Maurice Frey* for defendants.

WECHTER, J. Judgment is prayed herein enjoining the arrest or prosecution of plaintiffs, and any interference with them in respect to excavation or removal of topsoil from real property owned by them, or interference with their business '' under the pretended authority '' of section XXII of the Building Code of the Town of Amherst, Erie County, New York.

Said section XXII was adopted in its original form on May 3, 1943, and on October 18, 1943, was amended to its present form by the addition of subdivision 10, which addition may be denominated, a '' relief '' or '' escape '' clause substituting town board discretion for rigid enforcement in proper cases.

The authority for the adoption of this section of the code or this ordinance by the town board is sought in chapter 674 of the Laws of 1941 adding the present subdivision 23 (originally subdivision 21 and in 1942 to 1944 subdivision 22) to section 130 of the Town Law (L. 1932, ch. 634, as amd.) ; and also adding subdivision 12 to section 136 of the Town Law. Of course, these are to be read in connection with subdivision 15 of section 130, the '' general welfare '' provision.

Section 130 of the Town Law enumerates specifically certain purposes for which the town board, after public hearing, may' enact, amend and repeal ordinances, rules and regulations consistent with law.

Section 136 thereof authorizes the town board to provide by ordinance for the licensing and otherwise regulating of specific occupations.

Chapter 674 of the Laws of 1941 was by its terms applicable only to the counties of Erie and those adjoining New York City and has been amended to apply to Monroe (L. 1944, ch. 447) and Suffolk (L. 1947, ch. 361) and to certain townships additionally (L. 1944, ch. 447).

As applicable to this case, section 130 of the Town Law authorized enactment of ordinances by the town board '' In any town in the county of Erie   \*   \*   \*   regulating the manner of con-

struction on, removal of materials from, filling up, draining, cleaning, operating and using any lands or other premises for * * * stripping of top soil, * * * and prohibiting the use of any lands or other premises for the aforesaid purposes which do not comply with such regulations.'' By the same act authority was given to the town board in any town in the county of Erie (Town Law, § 136, subd. 12) to '' provide by ordinance for the licensing and otherwise regulating of * * * the operation and use of any lands or premises for * * * the stripping of top soil therefrom.''

The ordinance complained of was adopted in due compliance with law (no contention has been made and no evidence offered to the contrary) and in November, 1947, the Zoning Ordinance of the Town of Amherst (§ 9, subd. 2 thereof) was amended to read: '' Farm land may not be used, * * * for any other purpose than agriculture, and such uses as are generally accepted as farming and the producing and disposal of the products of such use '' and the lands of plaintiffs here in question, under said section 9 are '' Farm Lands '' as described in said zoning ordinance.

The court recognizes as a premise in this case that the use of lands for the removal therefrom of the topsoil is neither '' agriculture '' nor one of '' such uses as are generally accepted as farming '' or '' the producing and disposal of the products of such use ''. The business of plaintiffs, therefore, is in violation of subdivision 2 of section 9 of the zoning ordinance.

The plaintiffs made application under section XXII of the Building Code of Amherst for permits to remove topsoil, the applications being substantially identical and received a single written answer from the town board. The nonsequential numbers following correspond to the paragraph numbers of the application and answer. Variances were therein asked and denied:

1.— To waive requirement of topographical survey.

4.— To waive requirement that four inches of topsoil be left.

5.— To waive requirement that land be disced, harrowed, loosened, limed, fertilized, smoothed, seeded and rolled.

7.— To waive requirement of performance bond.

8.— To waive or modify permit fees.

10.— To waive limitation of each permit to six acres.

Variances or ordinance modifications were entertained and consideration offered by the town board:

2.— As to requirement for drainage survey if topographical map shall give town engineer requisite information.

3.— As to requirement for refill or dusting down lands after removal, conditioned on four inches of topsoil remaining and proper drainage being provided; distance of operation from highway also to be taken into account.

6.— As to requirement that operations for restoration of grasses be performed between April 1st-May 15th or between August 15th-October 1st, and variances to conform to weather conditions stated as policy of the board.

9.— As to thirty days' limitation of permit extensions where necessary are indicated as policy of the board.

The original plaintiffs Krantz have been joined (by stipulation) by Joseph Saia, William C. Diedrich and Milherst Nurseries, Inc., and in each instance plaintiffs are engaged in removing topsoil from lands owned by them, each such business representing a substantial investment; each plaintiff was, by the enforcement of this ordinance prevented from fulfilling bona fide contracts for delivery (or use for landscaping, shrubbery and ornamental stone work) of topsoil theretofore entered into, although no contract is shown antedating the adoption of the ordinance; some of the lands however were acquired by some of the plaintiffs prior to the adoption of the ordinance.

Plaintiffs contend that the ordinance should be held invalid as confiscatory and without due process of law and for those reasons violative of the State and Federal Constitutions in that it destroys the value of plaintiffs' investments in land, makes impossible the conducting of plaintiffs' businesses at a reasonable profit, and mandates the violation of existing contracts without compensation.

The defendants stress the necessity for the ordinance as a police power measure and as an implementation of the health, safety and welfare duties and authority of the town board, as more specifically delegated by subdivision 23 of section 130 of the Town Law. They assert the ill effects aimed at, the defects and deterioration resulting from the stripping of the topsoil; resultant depressions and excavations as catch basins for waters which become breeding places for mosquitoes, flies and other insects; the virtual destruction of the fertility of the land; the esthetic offense of denuded areas; the depreciation of adjacent properties and the loss of taxable values of adjacent and other properties through the town; the likelihood of abandonment of lands without fertility or productive value and consequent loss of town revenues.

The ordinance, while it regulates strictly, is not confiscatory.

This provision does not constitute a general and complete prohibition of use of property for a purpose which might be permitted without causing substantial injury to the community. It provides a formula, the observance of which, within the minimum standards testified to by the agronomists who have testified, will permit the business activities of the plaintiffs to the point where they invade or seriously threaten to invade the welfare rights of the community as to health, safety and general values (*People* v. *Calvar Corp.*, 286 N. Y. 419).

Esthetic considerations are a proper factor and these support this legislation (*Baddour* v. *City of Long Beach*, 279 N. Y. 167).

Substantially identical ordinances, with more drastic regulations and greater expense of operation have been enforced and upheld against the charge of unconstitutionality (*Burroughs Landscape Constr. Co.* v. *Town of Oyster Bay*, 186 Misc. 930; *Lizza & Sons, Inc.*, v. *Town of Hempstead*, 69 N. Y. S. 2d 296, affd. 272 App. Div. 921).

The inability of plaintiffs to fulfill contracts is not a compelling objection. Here there is no convincing showing that contracts cannot be fulfilled, only that the profit therefrom may be lessened or eliminated, but were the contention of impairment sustained, unconstitutionality would not be established thereby (*Hudson County Water Co.*, v. *McCarter*, 209 U. S. 349).

Plaintiffs contend that the ordinance is not to be held a proper exercise of the police power, but that it constitutes an arbitrary abuse of power exceeding any requirements of health, morals, safety or public welfare of the town.

The ordinance is a valid exercise of the police power 'as specifically amplified by chapter 674 of the Laws of 1941. This branch of governmental power, originally narrowly construed, has been more and more liberally interpreted in the past generation or two and more and more liberal construction has been given to those aspects of safety, morals, health and the inclusive general welfare which may be regulated by legislation. It is a fair statement, that unless expressly restricted, the police power may be held to include any good faith and reasonably prudent legislative program indicated as essential to the growing needs of a modern concept of the true welfare of a forward looking community. Esthetic considerations formerly tolerated as desirable and regarded as rather in the realm of the ideal are now given substantial weight as real and measurable factors and elements of value; in the same way a broad view of values of property as dependent upon and regulated by environment and

the interest of a community in the protection of property values as the basis of taxation and community preservation have become substantial elements in evaluating general welfare legislation.

While, therefore, unreasonable regulation must be guarded against, we must recognize that the maxim *sic utere tuo ut alienum non laedas* is an elastic one which must serve new needs and new standards and that today the old absolute ownership from the center of the earth *usque ad coelum* has given way to a variety of new needs and to a broadened concept of duty to neighbor, including in that term the community in which the particular property is located. Aviation, height, area and use zoning are accepted limitations and the law must constantly deal with changing conditions and human progress.

We have seen how reclamation and reforestation have suggested the preventative measures for limiting and restraining denudation of the land. Fertility, food productiveness are a public concern. Community interest in taxable values is recognized.

The police power is widely embracing and constitutionality is to be presumed unless unconstitutionality is clearly apparent.

The contention that the ordinance is capricious and discriminatory is not well founded. The legislation is general in its terms; it is applicable to all alike and it is directed to a valid purpose in professed effort on the part of the legislative body to serve broadly public welfare.

An early topsoil ordinance was declared discriminatory and invalid in 1940 (*Lizza & Sons, Inc.,* v. *Town of Hempstead,* 175 Misc. 383) but that ruling is overborne by the later adjudications of *Lizza & Sons, Inc.,* v. *Town of Hempstead* (69 N. Y. S. 2d 296, affd. 272 App. Div. 921) where the substantially identical ordinances of Hempstead, North Hempstead and Oyster Bay were upheld (see, also, *People* v. *Gerus,* 69 N. Y. S. 2d 283).

It is in no sense capricious. The testimony, oral, photographic and by personal inspection on the ground, establishes the health menace of disease-carrying insects, of undrained surface waters, of wind erosion and dust. It also establishes esthetically destructive consequences of denudation, as well as serious loss of land or tax values.

The testimony offered by the defense satisfactorily established the necessity and suitability of the detailed provisions of the ordinance to secure the welfare rights of the community against the threatened dangers.

These considerations fully establish compelling motives and substantial purposes negativing any charge of mere caprice.

Plaintiffs contend that the ordinance as a whole and in its several provisions is 'unreasonable, and specifically that it imposes great and unnecessary expense virtually prohibiting a legitimate occupation under the guise of regulation.

An ordinance does not become unreasonable by reason of the fact solely that it increases the expense of a business and consequently increases the cost of the product of the business. This ordinance of necessity increases the cost of the topsoil business and where permits are granted, it will increase the price of topsoil produced thereunder. This increase, however, is not such as to constitute confiscation and does not exceed a reasonable charge for regulation and enforcement.

The enforcement of this ordinance may impair or tend to make less profitable existing contracts but it has been held such necessary result will not of itself invalidate legislation (*Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, *supra*).

There is presented in this ordinance a general scheme which is within the police power and the right of the community to regulate the use of property for public health, safety and general welfare and this general scheme is well expressed in the ordinance and would survive even if one or the other of the particular provisions may, under particular objection or in the light of future experience, be held lacking in reasonableness.

The ordinance here challenged is constitutional, reasonable and valid and the complaint is dismissed.

The instant case presents a good faith test of the validity of the challenged legislation; it is brought after five years of non-enforcement of the ordinance; it is brought by substantial and reputable residents of the town of Amherst who have developed their businesses and made their investments under what may be described as an understandable misapprehension.

The ordinance was originally challenged promptly on enactment by the Buffalo Top Soil Company which obtained a strictly limited injunction against its enforcement as to the properties then owned by that plaintiff and the appeal therefrom on behalf of the town went unprosecuted until shortly before the present litigation when such appeal was dismissed by consent.

Furthermore, the lands of the plaintiff Saia in 1944 and since were assessed at a markedly increased value because of the plaintiffs' "use" consisting of its topsoil operation, and such lands have paid the resultingly higher tax.

Under such circumstances, an applicable rule seems to be *volenti non fit injuria;* moreover, the town has here offered no adequate proof of damage from the operation of the plaintiffs Krantz to support the counterclaim of its answer.

The counterclaim is dismissed.

Let judgment enter accordingly.