**CITY OF TULSA, OKL., et al. v. MIDLAND VALLEY R. CO.**

No. 3538.

Circuit Court of Appeals, Tenth Circuit.

May 11, 1948.

Milton W. Hardy and A. M. Widdows. both of Tulsa, Okl. (Chas. R. Bostick, City Atty., of Perry, Okl., and Summers Hardy, of Tulsa, Okl., on the brief), for appellants.

James D. Gibson, of Muskogee, Okl. and H. L. Smith, of Tulsa, Okl., for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

In April 1946, the City of Tulsa, Oklahoma, by appropriate resolution, declared its 5th street to be an arterial highway and directed the City Engineer to notify the Midland Valley Railroad Company to restore the crossing at 5th street to the condition existing prior to the time it was closed in 1928 by an order of the State Corporation Commission. When the Railroad Company refused and the City sent its employees upon the right of way to open the crossing, the Railroad Company brought this action, pursuant to which the trial court permanently enjoined the City

and its officials from designating, locating and constructing a crossing over the right of way and tracts of the Railroad Company.

By this appeal, the City of Tulsa contends that the trial court erred in holding that the Corporation Commission had exclusive jurisdiction to determine and prescribe the crossings of the tracks of the railroad in Tulsa, and in particular over 5th street; that in any event, the order of the Corporation Commission closing the 5th street crossing was void for lack of jurisdiction, because the City of Tulsa was a necessary party and was not served; and, that the order abrogated a contract in violation of Article 1, Section 10 of the Constitution of the United States.

In 1919 the Oklahoma Legislature gave the Corporation Commission "* * * full jurisdiction over all public highway crossings, where same cross steam or electric railroads or railways within the state of Oklahoma," Laws of 1919, Ch. 53, p. 88, Sec. 1, 17 O.S.A. § 81, and "* * * exclusive jurisdiction to determine and prescribe the particular location of highway crossings, for steam or electric railways * * *" and "* * * to alter or abolish any such crossings * * *". Laws of 1919, Ch. 53, p. 88, Sec. 4, 17 O.S.A. § 84. And this general power has been consistently sustained in the Oklahoma Courts. Thompson v. State, 196 Okl. 190, 164 P.2d 232; Kansas City So. Ry. Co. v. State, 195 Okl. 424, 158 P.2d 699; Kansas City So. Ry. Co. v. Citizens of Westville, 184 Okl. 100, 89 P.2d 320, certiorari denied 306 U.S. 658, 59 S.Ct. 774, 83 L.Ed. 1055; City of Ardmore v. Chicago R. I. & P. Ry. Co., 172 Okl. 373, 45 P.2d 540.

In 1921, the Chamber of Commerce of the City of Tulsa invoked the jurisdiction of the Oklahoma Corporation Commission by filing an application to require the Railroad Company to construct an underpass at 6th street, and requested the Commission to consider the public crossings in Tulsa. The City of Tulsa was not made a party nor given notice, but when the cause came on for hearing the City Attorney asked that the City be made a party and participated in the lengthy hearing involving the proposed underpass and the closing of 5th street.

The record does not disclose any order or further action until 1926 when the City of Tulsa moved to reopen the cause, resulting in an order providing for the construction of an underpass at 6th street at the equal cost to the Railroad Company and the City, and for the closing of 5th street upon completion of the underpass. Upon application of the City the order was modified to provide for the closing of the 5th street crossing for a trial period of one year after the completion of the 6th street underpass, "the matter thereafter to be reopened upon application of the city of Tulsa, if it is thought desirable for rehearing and action by the Commission".

In 1930, after the underpass at 6th street had been opened and the crossing at 5th street closed for over one year, the City of Tulsa again applied to the Corporation Commission for an order reopening the crossing at 5th street. In denying this application, the Commission was of the opinion that the public interest could best be served by leaving the crossing at 5th street closed, and denied the application. An appeal was taken to the Supreme Court of Oklahoma and affirmed. City of Tulsa v. State Corporation Commission, 169 Okl. 455, 37 P.2d 619.

Without denying the exclusive jurisdiction of the Corporation Commission under the 1919 Act, appellants invoke the 1945 Amendment to the Highway Act, Laws of 1945, pp. 284, 285, Secs. 1–8, 69 O.S.A. §§ 11.1–11.8, as repealing or modifying by implication the exclusive provisions of the 1919 Act. The 1945 Act authorizes certain cities, including the City of Tulsa, to "* * * plan, designate, establish, regulate, vacate, alter, improve, maintain and provide limited access facilities * * *", and to that end "* * * provide for the elimination of intersections * * * with any highway, road, street, or alley * * * or by closing off such other highway, road, street or alley, or by otherwise protecting such limited access facility * * *."

It is said that the two acts are in intolerable conflict; that they cannot stand

together, and the former must therefore give way to the latter, insofar as is necessary to give full force and effect to the powers granted therein. In other words it is contended that given its reasonable construction, the 1945 Act operates to divest the Corporation Commission of exclusive jurisdiction over the street crossings in the City of Tulsa and to confer such jurisdiction upon that City.

■ Since repeals by implication are not favored in the law, we should not impute to the Legislature an intent to repeal, modify or supersede the former Act unless such intention is manifestly clear from the context of the legislation. United States v. Burroughs, 289 U.S. 159, 53 S.Ct. 574, 77 L.Ed. 1096; Frost v. Wenie, 157 U.S. 46, 15 S.Ct. 532, 39 L.Ed. 614; United States v. Rollnick, 2 Cir., 91 F.2d 911; Cochran v. Sullivan, 94 Okl. 23, 220 P. 870; Southerland Statutory Construction Section 2012. Furthermore, "Legislative grants to municipal corporations are to be strictly construed, and any reasonable doubt is to be resolved against the grant. And the enumeration of specific powers operates to exclude those not enumerated." City of Tulsa v. Southwestern Bell Telephone Co., 10 Cir., 75 F.2d 343, 352.

■ The 1945 Act specifically authorizes the City to provide for the elimination of intersections with any other "highway, road, street, or alley", but it does not in specific terms authorize the City to prescribe the particular location of highway crossings for steam or electric railways, nor does it authorize it to "alter or abolish" any such crossings. When the two acts are read together with a disposition to harmonize, it seems sufficiently plain that the Legislature did not intend to divest the Corporation Commission of the exclusive jurisdiction over highway crossings for steam or electric railways within the city, exercising the specifically enumerated powers in the later Act.

■ If the order of the Corporation Commission is void for lack of service or notice to the City of Tulsa, the remedy is not self help by undertaking to open the street on its own initiative; it is to the Corporation Commission for a valid order.

Moreover, the City was made a party to the proceedings at its request and apparently assumed the laboring oar. It twice applied for reopening or reconsideration of the order and appealed to the Supreme Court from an adverse ruling without complaining of lack of notice or service, and it cannot complain of it here.

■ On the constitutional question, it is pointed out that the railroad was constructed in pursuance of the authority granted by Congress in the Act of February 28, 1902, 32 Stat. 43, Section 9 of which in material part obligated the Railroad Company to " * * * construct and maintain continually all road and highway crossings * * * wherever said roads and highways do now or may hereafter cross the railway's right of way, or may be by the proper authorities laid out across the same * *" ; that the right of way and tracks of the railroad were constructed through the City of Tulsa and particularly across 5th street in pursuance of authority granted by City Ordinance No. 75, approved May 25, 1904, which pertinently provided that the Railroad Company should maintain " * * * proper and suitable crossings over and across its track or tracks wherever any of said streets and alleys shall cross the same; * * * and if the said railroad company shall fail to so construct and to keep said crossings in suitable repair, the said city shall have the right to construct and repair the same and to assess the cost thereof to the said railroad company * * *".

It is said that the construction of the railroad tracks over 5th street in accordance with the enabling statute and ordinance, constituted a valid contract between the City of Tulsa and the Railroad Company which could not be abrogated or impaired by the subsequent grant of power to the Corporation Commission. See Enid City Ry. Co. v. City of Enid, 43 Okl. 778, 144 P. 617 and Chicago R. I. & P. Ry. Co. v. Taylor, 79 Okl. 142, 192 P. 349. True, the construction of the railroad in pursuance of the grant of the right, constituted a contract between the City of Tulsa and the Railroad Company. But, contracts of this nature have been generally understood to be subordinate to the public interest they affect, and they must yield to the police power of

the state to regulate in the interest of the public welfare. "* * * The contract will carry with it the infirmity of the subject-matter." Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 531, 52 L.Ed. 828. See also Home Bldg. & L. Ass'n. v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, and cases cited; Northern Pacific Railway v. Duluth, 208 U.S. 583, 28 S.Ct. 341, 52 L.Ed. 630; Kansas City So. Ry. Co. v. Citizens of Westville, 184 Okl. 100, 89 P.2d 320, certiorari denied 306 U.S. 658, 59 S.Ct. 774, 83 L.Ed. 1055; Chicago R. I. & P. Ry. Co. v. Taylor, 79 Okl. 142, 192 P. 349.

The City of Tulsa and the Railroad Company could not enter into a contract so rigid and immutable as to render impotent the police power of the State. The contract contemplated the operation of a railroad, clothed with a public interest, hence subject to regulation under the police power of constituted authority, whether that authority existed at the time of the contract or thereafter.

The judgment is affirmed.