** Summary ** COUNTY COMMISSIONERS HANDLING DATA PROCESSING NEEDS OF COUNTY A Board of County Commissioners, when determining the most effective manner of handling the county's data processing needs, is authorized to enter into a contract for computer services only with a capable data processing company. The authority vested in the Boards of County Commissioners to contract for computer services with a capable data processing company does not include the authority to merge county data processing equipment with data processing equipment operated under the supervision of a local municipality. The County Commissioners, however, are not precluded under 19 O.S. 376 [19-376] (1971), from leasing the data processing equipment of a local municipality. The language contained in 19 O.S. 378 [19-378] (1971), authorizing the Boards of County Commissioners to contract with a public trust created pursuant to the provisions of 60 O.S. 176 [60-176] (1971), for the purpose of providing electronic data processing services, expresses a legislative intent that powers set forth in 19 O.S. 376 [19-376], 19 O.S. 378 [19-378] (1971), are to operate to the exclusion of those not enumerated. The authority to provide for the "operation, maintenance, repair and utilization" of electronic data processing equipment, and to "deter mine the most effective manner of handling the county's data processing needs" is exclusively vested in the Boards of County Commissioners, and county officers do not have the discretion to participate in a data processing system other than that provided by the county. When acting pursuant to the authority vested in them by virtue of the provisions of 19 O.S. 376-378 [19-376-378], the Boards of County Commissioners are not required to procure the approval of county officers to whom the county data processing system is made available. While the Boards of County Commissioners may not deprive county officers of the means essential to the discharge of their statutory function, an exercise of the Commissioner's discretion under 19 O.S. 376 [19-376] (1971), is not subject to the veto power of a county officer upon the mere allegation that his capacity to discharge his statutory functions is thereby jeopardized. County officers may not circumvent the exclusive authority vested in the Boards of County Commissioners by the provisions of 19 O.S. 376 [19-376] (1971), by establishing a data processing service independent of that provided by the county. The Attorney General has received your request for an opinion wherein you refer to the following questions raised by the Tulsa County Assessor: "1. Do the County Commissioners have the right under the subject statute to merge the present county data processing equipment with the City of Tulsa data processing equipment? "2. If Question 1 is in the negative, then do the Commissioners have the right to move the county data processing equipment to the City Hall Building under the contention of obtaining free rental space when the Mayor of Tulsa has stated that there will be no free rent unless it is to result in a merger with the city data processing equipment? "3. Is there any way under the subject statute that the Tulsa County data processing system can be combined or merged with the City of Tulsa data processing system other than under a public trust? "4. Since the County Election Board has not been required to use the county data processing system and the Sheriff has recently joined the city police department data processing system and the County Courts and County Court Clerk do not plan to participate in the county data processing system, may I also have the freedom to choose what data processing system I will use now or in the future? "5. Can the County Commissioners make major changes in the county data processing system that will result in large conversion costs without getting approval from the users who must eventually bear these costs out of their operating budgets? "6. Can the County Commissioners make major changes in the county data processing system that will result in jeopardizing the statutory duties of my office to the detriment of all of the recipients of the tax dollar? "7. The Oklahoma County Assessor has for some years operated his own, in house, data processing system out of his annual budget. This operation includes the rental of data hardware and the cost of all software and personnel. The Oklahoma County Treasurer and County Election Board subscribe to this service. Is there any legal objection to my office setting up such a program which could be of service also to the County Treasurer and any other interested county function?" These questions will be examined in the sequence in which they are raised. The first question makes inquiry as to the authority of the County Commissioners to merge the county's data processing equipment with that belonging to the local municipality. Title 19 O.S. 376 [19-376] and 19 O.S. 378 [19-378] are dispositive of this question. Section 376 provides: "The Board of County Commissioners of any county in the State of Oklahoma may acquire electronic data processing equipment by purchase, lease or transfer, and may provide for the operation, maintenance, repair and utilization of such electronic data processing equipment as shall be necessary to conduct the county's business or may enter into a contract for computer services with a capable data processing company, to provide systems, designs and analysis for county officials. "The Board of County Commissioners shall determine the most effective manner of handling the county's data processing needs, either by outright purchase or lease of equipment or entering into contract for computer services, and shall offer data processing advisory service to all county elected officials." Section 19 O.S. 378 [19-378] provides: "Nothing in the act shall be interpreted as prohibiting a county, acting through the authority of the Board of County Commissioners, from contracting with an established public trust which has or may be created pursuant to the provisions of Sections 60 O.S. 176 [60-176] et seq. of Title 60 of the Oklahoma Statutes for the purpose of providing to all county offices, departments and agencies electronic data processing services." The decisions in Oklahoma hold that a statute is to be construed in such a manner as to reconcile its different provisions and render them consistent and harmonious, and give intelligent effect to each. Home-Stake Production Company v. Board of Equalization of Seminole County, Okl., 416 P.2d 917
(1966). These decisions require that the provision of Section 376 authorizing the County Commissioners to "determine the most effective manner of handling the county's data processing needs" is to be read in the context of the preceding provision authorizing the Commissioners to "provide for the operation, maintenance, repair and utilization" of electronic data processing equipment. The preceding provision of Section 376 authorizes the Commissioners to acquire data processing equipment by "purchase, lease or "transfer," or, in the alternative, to "enter into a contract for computer services." The authorization to contract for computer services, however, is expressly limited in the following language: ". . . with a capable data processing company. . ." The subsequent provision of Section 376 authorizes the Commissioners to handle the county's data processing needs: ". . . either by outright purchase or lease of equipment or entering into a contract for computer services . . ." Construing these provisions in such a manner as to render them consistent and harmonious requires the conclusion that the subsequent provision authorizing the Commissioners to handle the county's data processing needs by contracting for computer services is delimited by the preceding provision authorizing the Commissioners to contract for computer services "with a capable data processing company." The enumeration of specific powers in a statute operates to exclude those not enumerated. City of Tulsa v. Midland Valley R. Co., 168 F.2d 252
(10th Cir. 1948). Accordingly, the cases in Oklahoma have consistently adhered to the rule set forth in Tulsa Exposition Fair Corporation v. Board of County Commissioners, Okl., 468 P.2d 501 (1970), which held: "Counties have only such authority as is granted by statute. . . The Board of County Commissioners in exercising corporate powers is limited to those fields expressly assigned to such subdivisions of the State by the Legislature. . . Public officers possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law. . ." (Emphasis added) Coupled with the statutory language above noted, these holdings dictate the conclusion that the Boards of County Commissioners, in determining the most effective manner of handling the county's data processing needs, are authorized to enter into a contract for computer services only with "a capable data processing company." The language noted does not include authorization to merge county data processing equipment with data processing equipment operated under the supervision of a local municipality. Inasmuch as the authority to purchase or lease such equipment is set forth as an alternative means of handling the data processing needs of the county, however, 19 O.S. 376 [19-376] (1971), does not preclude the County Commissioners from leasing the data processing equipment of a local municipality. The language in 19 O.S. 378 [19-378] (1971), specifying that the legislative intent underlying Sections 376 through 378 does not preclude the Boards of County Commissioners from contracting with a public trust created pursuant to the provisions of 60 O.S. 176 [60-176] (1971), for the purpose of providing electronic data processing services, gives added force to the conclusion above indicated that the Commissioners may contract for computer services only with "a capable data processing company." Implicit in this language is the view that "expressio unius est alterius" is the rule of construction to be applied to the foregoing sections. Hence, the means provided in 19 O.S. 1971, 376-378 [19-376] — [19-378], for handling a county's data processing needs are exclusive. The provisions of 19 O.S. 376 [19-376] (1971), clearly indicate that it is the Boards of County Commissioners who are authorized to acquire and provide for the "operation, maintenance, repair and utilization" of electronic data processing equipment. Further, it is the Commissioners who are to "determine the most effective manner of handling the county's data processing needs." These provisions are consistent with 19 O.S. 1971 2 [19-2] and 3. Section 2 provides: "Any real or personal estate heretofore or which may be hereafter conveyed to any county shall be deemed the property of such county. " Section 3 provides: "The powers of a county as a body politic and corporate shall be exercised by its Board of County Commissioners." The authority lodged in the Boards of County Commissioners by these provisions is exclusive. Hence, it is not within the scope of discretion of individual county officers to determine whether or not they will participate in the data processing service adopted by the Boards of County Commissioners. Section 376 states plainly that the Commissioners: ". . . shall offer data processing advisory service to all county elected officials." (Emphasis added) Since the provisions of 19 O.S. 376 [19-376] (1971), pertinent to the affording of electronic data processing services for the county is exclusively lodged in the Boards of County Commissioners, the following conclusions are appropriate: The Boards of County Commissioners, when acting pursuant to the authority vested in them by Section 376, are not obligated to obtain the approval of county officials utilizing the data processing service afforded by the county in determining "the most effective manner of handling the county's data processing needs." Obviously, the Boards of County Commissioners cannot deprive an elected county official of the means required to discharge his statutory functions. On the other hand, the discretion vested in the Commissioners under Section 376 is not subject to the veto power of a given county official who may allege that his capacity to perform his statutory duties is thereby jeopardized. Where a public official abuses his discretion Oklahoma law affords an appropriate judicial remedy. Finally, county officers do not have the authority to by-pass the authority vested in the Boards of County Commissioners by 19 O.S. 376 [19-376] (1971), by establishing a data processing service independent of that afforded by the county. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: 1. Your first question is answered in the negative. A Board of County Commissioners, when determining the most effective manner of handling the county's data processing needs, is authorized to enter into a contract for computer services only with a capable data processing company. 2. Your second question must be answered as follows: The authority vested in the Boards of County Commissioners to contract for computer services with a capable data processing company does not include the authority to merge county data processing equipment with data processing equipment operated under the supervision of a local municipality. The County Commissioners, however, are not precluded under 19 O.S. 376 [19-376] (1971), from leasing the data processing equipment of a local municipality. 3. The answer to your third question is in the negative. The language contained in 19 O.S. 378 [19-378] (1971), authorizing the Boards of County Commissioners to contract with a public trust created pursuant to the provisions of 60 O.S. 176 [60-176] (1971), for the purpose of providing electronic data processing services, expresses a legislative intent that powers set forth in 19 O.S. 376 [19-376], 19 O.S. 378 [19-378] (1971), are to operate to the exclusion of those not enumerated. 4. Your fourth question is answered in the negative. The authority to provide for the "operation, maintenance, repair and utilization" of electronic data processing equipment, and to "determine the most effective manner of handling the county's data processing needs" is exclusively vested in the Boards of County Commissioners, and county officers do not have the discretion to participate in a data processing system other than that provided by the county. 5. Your fifth question is answered in the negative. When acting pursuant to the authority vested in them by virtue of the provisions of 19 O.S. 1971, 376-378 [19-376] — [19-378], the Boards of County Commissioners are not required to procure the approval of county officers to whom the county data processing system is made available. 6. The answer to your sixth question is as follows: While the Boards of County Commissioners may not deprive county officers of the means essential to the discharge of their statutory function, an exercise of the Commissioners' discretion under 19 O.S. 376 [19-376] (1971), is not subject to the veto power of a county officer upon the mere allegation that his capacity to discharge his statutory functions is thereby jeopardized. 7. Your seventh question is answered as follows: County officers may not circumvent the exclusive authority vested in the Boards of County Commissioners by the provisions of 19 O.S. 376 [19-376] (1971), by establishing a data processing service independent of that provided by the county. (Marvin C. Emerson)