Dear Representatives, Linda Larason,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
Does a Power of Attorney or any other state law allow anindividual to designate to another the power or authority to makehealth care decisions related to the denial or withdrawal ofnutrition and/or hydration for an individual in a persistentvegetative state?
¶ 1 To respond to your inquiry all varieties of Power of Attorney available in Oklahoma were reviewed. Oklahoma is unique in that it currently has three types of power of attorney statutorily established. The three are:
 Special Power of Attorney, 58 O.S. 1051 — 58 O.S. 1062 (1990).
 Uniform Durable Power of Attorney, 58 O.S. 1071 — 58 O.S. 1077 (1990).
Supervised Power of Attorney, 58 O.S. 1063 (1990).
¶ 2 The Supervised Power of Attorney is limited strictly to the care, custody and management of the principal's estate. (See 58O.S. 1063(B) (1990)). No mention is made as to the care of the principal's person. Generally in construing a statute the enumeration of specific powers in a statute operates to exclude powers not enumerated. City of Tulsa v. Midland Valley R. Co.,168 F.2d 252 (10th Cir. 1948). Inasmuch as the Legislature did not extend the authority of the attorney-in-fact to encompass the principal's person, this provision may not be construed in that manner.
¶ 3 A review of both the Special Power of Attorney and the Uniform Durable Power of Attorney reveals that each has provisions which would allow the principal to appoint a person to be responsible for the care of his person. (See 58 O.S. 1051
(1990); 58 O.S. 1074 (1990)).
¶ 4 However thus far the Oklahoma courts have not addressed the question of when a power of attorney may be used to withhold or withdraw life-sustaining procedures for a medical facility patient when the patient is in a persistent vegetative state with no hope for improvement. A persistent vegetative state is generally "a condition in which a person exhibits motor reflexes but evinces no indications of significant cognitive function."Cruzan v. Director, Missouri Department of Health,110 S.Ct. 2841, 2845 (1990).
¶ 5 The question which you have raised has been the focus of much attention. Justice O'Connor of the United States Supreme Court in her concurring opinion in the Cruzan case stated:
 I also write separately to emphasize that the Court does not today decide the issue whether a State must also give effect to the decisions of a surrogate decision maker. . . . Delegating the authority to make medical decisions to a family member or friend is becoming a common method of planning for the future. See, e.g., Areen, The Legal Status of Consent Obtained from Families of Adult Patients to Withhold or Withdraw Treatment, 258 JAMA 229, 230 (1987). Several States have recognized the practical wisdom of such a procedure by enacting durable power of attorney statutes that specifically authorize an individual to appoint a surrogate to make medical treatment decisions. Some state courts have suggested that an agent appointed pursuant to a general durable power of attorney statute would also be empowered to make health care decisions on behalf of the patient. Other States allow an individual to designate a proxy to carry out the intent of a living will. These procedures for surrogate decision making, which appear to be rapidly gaining in acceptance, may be a valuable additional safeguard of the patient's interest in directing his medical care.
110 S.Ct. 2841 at 2857-58 (Emphasis added).
¶ 6 The Legislature has attempted to address the concern you have expressed through the Oklahoma Natural Death Act enacted in 1985, which created the "Directive to Physicians" or what is commonly known as the Living Will. 63 O.S. 3101 (1985) et seq.
¶ 7 As originally enacted, the Directive to Physicians could be used to prohibit the use of life-sustaining measures with the exception of nourishment, hydration, medication or any medical procedure believed necessary to alleviate pain. However, pursuant to 1990 amendments, patients can now explicitly exclude artificial nutrition and hydration. See 63 O.S. 3101 (1990) et seq., particularly 63 O.S. 3102.
¶ 8 However, under the Oklahoma Natural Death Act, before a patient may affirmatively refuse life-sustaining treatment in Oklahoma he must be diagnosed with a:
 "[t]erminal condition" which means an incurable and irreversible condition caused by injury, disease or illness which, even with the administration of any life-sustaining procedure and within reasonable medical judgment, will result in the death of a person from that condition or a complication arising from that condition within hours or days;
63 O.S. 3102(8) (1990).
¶ 9 Even more restrictive under the Oklahoma Natural Death Act, is the requirement that in order for the Directive to Physicians to be binding it must be executed by a "qualified patient" which
 means a declarant who has been personally and independently examined by each of two physicians and who has been diagnosed and certified in writing by each of the two physicians to be afflicted with a terminal condition.
63 O.S. 3102(7) (1990).
¶ 10 If the declarant, that is the person executing the Directive, is not a qualified patient (terminally ill or injured) "the attending physician may give weight to the directive as evidence of the directions of the patient regarding the withholding or withdrawal of life-sustaining procedure[s]. . . ." However, unlike a Directive executed by a qualified patient, the physician is under no obligation to honor the Directive regarding life-sustaining measures or to ensure that it is honored. See 63O.S. 3107(D) (1990). Additionally the declarant must explicitly acknowledge his desire for the withdrawal of artificial nutrition and hydration. 63 O.S. 3103 (1990).
¶ 11 The Oklahoma Legislature has made significant strides in the area concerning terminally ill or injured patients. These persons can affirmatively give their binding consent to refuse life-sustaining measures when death is imminent. However, the Oklahoma Natural Death Act is not adequate in terms of providing the same assurances for persons not facing a terminal illness or injury at the time the Directive to Physicians is executed. Moreover, it does not provide for the delegation of the decision-making authority to another person in any circumstance. In our view the Legislature has provided the exclusive method by which individuals may request that they be denied life-sustaining treatment, including nutrition and/or hydration, through the enactment of the Oklahoma Natural Death Act.
¶ 12 This precludes persons in Oklahoma from making the same requests through the execution of powers of attorney.
¶ 13 It is, therefore, the official opinion of the AttorneyGeneral that there is no statutory authority in the State ofOklahoma to delegate, by the Special Power of Attorney, 58 O.S.1051 — 58 O.S. 1052 (1990); the Uniform Durable Power ofAttorney, 58 O.S. 1071 — 58 O.S. 1077 (1990); or theSupervised Power of Attorney, 58 O.S. 1063 (1990) orotherwise, to another the power or authority to make health caredecisions related to the denial or withdrawal of nutrition and/orhydration for an individual in a persistent vegetative state. TheOklahoma Natural Death Act, 63 O.S. 3101 (1990) et seq.,provides a declarant an opportunity, through use of theDirectives to Physicians, to refuse artificial nutrition andhydration in limited circumstances.
ROBERT H. HENRY ATTORNEY GENERAL
TAMMY M. THOMPSON ASSISTANT ATTORNEY GENERAL
* House Bill 1893 passed during the 1992 legislative session created the "Oklahoma Rights of the Terminally Ill or Persistently Unconscious Act" found at 63 O.S. 3101.1 (1991). Previous sections 3101 et seq. were repealed and new act was effective September 1, 1992.)