HUDSON COUNTY WATER COMPANY v. McCARTER, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE OF NEW JERSEY.

No. 184. Argued March 18, 19, 1908.—Decided April 6, 1908.

The boundary line between private rights of property which can only be limited on compensation by the exercise of eminent domain, and the police power of the State which can limit such rights for the public interest, cannot be determined by any formula in advance, but points in that line helping to establish it have been fixed by decisions of the court that concrete cases fall on the nearer or farther side thereof.

The State, as *quasi*-sovereign and representative of the interests of the public, has a standing in court to protect the atmosphere, the water and the forests within its territory, irrespective of the assent or dissent of the private owners immediately concerned. *Kansas v. Colorado*, 185 U. S. 125; *Georgia v. Tennessee Copper Co.*, 206 U. S. 230.

The public interest is omnipresent wherever there is a State, and grows more pressing as population grows, and is paramount to private property of riparian proprietors whose rights of appropriation are subject not only to rights of lower owners but also to the limitations that great foundations of public health and welfare shall not be diminished.

A State has a constitutional power to insist that its natural advantages remain unimpaired by its citizens and is not dependent upon any reason for its will so to do. In the exercise of this power it may prohibit the diversion of the waters of its important streams to points outside of its boundaries.

One whose rights are subject to state restriction cannot remove them from the power of the State by making a contract about them, and a contract illegal when made—such as one for diverting water from the State—is not within the protection of the contract clause of the Constitution

One cannot acquire a right to property by his desire to use it in commerce among the States.

Citizens of other States are not denied equal privileges within the meaning of the immunity clause of the Constitution by a statute forbidding the diversion of waters of the State if they are as free as the citizens of the State to purchase water within the boundaries of the State, nor can such a question be raised by a citizen of the State itself.

Chap. 238, Laws of New Jersey of 1905, prohibiting the transportation of

water of the State into any other State is not unconstitutional either as depriving riparian owners of their property without due process of law, as impairing the obligation of contracts made by them for furnishing such water to persons without the State, as an interference with interstate commerce, or as denying equal privileges and immunities to citizens of other States.

70 N. J. Eq. 695, affirmed.

THE facts are stated in the opinion.

*Mr. Gilbert Collins* and *Mr. Richard V. Lindabury* for plaintiff in error:

The act of 1905 is an attempt to control interstate commerce, and cannot be sustained under the police power.

As is established by principle and authority, the court must examine the reasonableness of a claim to support a state statute regulating commerce, under the guise of an exercise of the police power. The act of 1905, as applied to the Passaic, is without any justification in the needs of the inhabitants of the State.

Water when reduced to possession is a commodity, which may be sold, like any other. *Syracuse* v. *Stacey*, 169 N. Y. 231, 245; *Suburban Water Co.* v. *Harrison*, 72 N. J. L. 194.

When a statute, interfering with interstate commerce, is founded on the police power of the State, the question always arises whether the act goes beyond the necessity for its exercise. This question is judicial. The reasonableness of the statute is an element of the inquiry whether it encroaches upon the national authority. *Railroad Co.* v. *Husen*, 95 U. S. 473; *Lake Shore Railroad Co.* v. *Ohio*, 173 U. S. 285, 300; *Lochner* v. *New York*, 198 U. S. 45; *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Brimmer* v. *Rebman*, 138 U. S. 78; *Scott* v. *Donald*, 165 U. S. 58; *Indiana* v. *Indiana &c. Oil, Gas & Mining Co.*, 120 Indiana, 575; *S. C.*, 6 L. R. A. 579; *Benedict* v. *Columbus Construction Co.*, 50 N. J. Eq. 23, 38.

The act is void because it denies equal privileges to citizens of another State. *Minnesota* v. *Barber*, 136 U. S. 313; *In re*

*Watson,* 15 Fed. Rep. 511; *Ward* v. *Maryland,* 12 Wall. 418; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 560.

The decision now under review, and the act of 1905, are both attempts to change the common law in order to destroy the vested and contract rights of the plaintiff in error.

The Federal courts will not follow the state courts in the interpretation of state law where it appears that the state courts have undertaken to change the law in such manner as to destroy contract and vested rights, or so as to take property without due process of law.

Plaintiff in error is entitled to have its case considered here fully on the merits, as a common law question, unhampered by any considerations of modern state policy. *Ohio Life & Trust Co.* v. *Debolt,* 16 How. 416, 432; *Chicago* v. *Robbins,* 2 Black, 418; *Michigan Central* v. *Myrick,* 107 U. S. 102.

The act of 1905 is an attempt to impair the obligation of contracts of the plaintiff in error.

The effect of the act is directly to destroy the contracts with consumers in Staten Island, by requiring the court of chancery to enjoin their fulfillment. Unless, therefore, the contracts were invalid upon other grounds than those created by the act of 1905, that act is void, as impairing the obligation of contracts, and the decree for an injunction should be reversed.

The waters of running streams in New Jersey are the common property of the riparian landowners.

Any riparian owner on a fresh water stream may divert and use as much water as he chooses, so long as he does not impair the like right of the owners down the stream without their consent. If he has their consent, he may divert up to the whole flow of the stream. A riparian owner nearest to tide water may divert the whole flow since there are no owners on the stream below him to be injured.

It is really a matter of little importance to know who, if any one, owns the water while running in the stream, because the real question is not the ownership of the water while running, but of the right to take it and divert it.

Running water is incapable of ownership, and neither the State nor the riparian owners have any title in it until it is appropriated. *Sweet* v. *Syracuse*, 129 N. Y. 316, 335; *City of Syracuse* v. *Stacey*, 169 N. Y. 235, 245; *Society* v. *Morris Canal*, 1 N. J. Eq. (Saxton) 157, 189; *Cobb* v. *Davenport*, 32 N. J. Law, 369; *Attorney General* v. *Del. & Bound Brook R.*, 27 N. J. Eq. 631; *Higgins* v. *Flemington Water Co.*, 36 N. J. Eq. 538, 543; *Albright* v. *Cortwright*, 64 N. J. L. 330, 337; *Simmons* v. *Paterson*, 60 N. J. Eq. 385, 389; *Doremus* v. *City of Paterson*, 65 N. J. Eq. 711, 713.

*Mr. Robert H. McCarter*, Attorney General of the State of New Jersey, for defendant in error:

The State, as a lower owner, is entitled to preserve the integrity of the stream so that it will come to it unimpaired in quantity. *Attorney General* v. *Delaware & Bound Brook R. R. Co.*, 12 C. E. Gr. (27 N. J. Eq.) 631; *Attorney General* v. *Jamaica Pond Aqueduct Corporation*, 133 Massachusetts, 361; *Coosaw Mining Co.* v. *South Carolina*, 144 U. S. 550, and cases there cited; Story's Eq. Jur., §§ 922, 923; Kerr on Injunctions, 262; 1 Joyce on Injunctions, 120; *Missouri* v. *Illinois et al.*, 180 U. S. 208, 243.

The State, without regard to its lower proprietorship, is entitled to an injunction as successor to the crown and as representative of the public; and this, too, notwithstanding the provisions of the Federal Constitution relied upon by the appellant.

The State has a supervisory interest and property in the waters that lie or flow in it, entitling and requiring it, as the representative of the public, to preserve the same, and that this right and duty have been inherited from the King of England. Hargrave's Law Tracts, chap. 2; *Smith* v. *Rochester*, 92 N. Y. 463, 477 and cases cited; Farnham on Waters, §§ 133, 138, 138*a*, 140*a* and 141; *Connecticut River Lumber Co.* v. *Alcott Falls Co.*, 65 N. H. 290; *S. C.*, 21 Atl. Rep. 1090; *State* v. *Ohio Oil Co.*, 150 Indiana, 21; *S. C.*, 49 N. E. Rep. 809;

*Ohio Oil Co.* v. *Indiana,* 177 U. S. 190; *Kansas* v. *Colorado,* 185 U. S. 125; *Georgia* v. *Tennessee Copper Co.,* 206 U. S. 226, 237.

The law under consideration was passed as an exercise of the police power of the State, and as such is consequently free from any of the constitutional objections that are here raised against it. *Jones* v. *Brim,* 165 U. S. 180; *P. R. R.* v. *Hughes,* 191 U. S. 477; *Field* v. *Barber Asphalt Co.,* 194 U. S. 623; *Cleveland &c. Co.* v. *Illinois,* 177 U. S. 514; *Cook* v. *Marshall County,* 196 U. S. 261, 272.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an information, alleging that the defendant (the plaintiff in error), under a contract with the City of Bayonne in New Jersey, has laid mains in that city for the purpose of carrying water to Staten Island in the State of New York. By other contracts it is to get the water from the Passaic River, at Little Falls, where the East Jersey Water Company has a large plant by which the water is withdrawn. On May 11, 1905, the State of New Jersey, reciting the need of preserving the fresh water of the State for the health and prosperity of the citizens, enacted that "It shall be unlawful for any person or corporation to transport or carry, through pipes, conduits, ditches or canals, the waters of any fresh water lake, pond, brook, creek, river or stream of this State into any other State, for use therein." By a second section a proceeding like the present was authorized, in order to enforce the act. Laws of 1905, c. 238, p. 461. After the passage of this statute the defendant made a contract with the City of New York to furnish a supply of water adequate for the Borough of Richmond, and of not less than three million gallons a day. Thereupon this information was brought, praying that, pursuant to the above act and otherwise, the defendant might be enjoined from carrying the waters of the Passaic River out of the State. There are allegations as to the amount of water and the prob-

able future demand upon which the parties are not wholly agreed, but the essential facts are not denied. The defendant sets up that the statute, if applicable to it, is contrary to the Constitution of the United States, that it impairs the obligation of contracts, takes property without due process of law, interferes with commerce between New Jersey and New York, denies the privileges of citizens of New Jersey to citizens of other States, and denies to them the equal protection of the laws. An injunction was issued by the Chancellor, 70 N. J. Eq. 525, the decree was affirmed by the Court of Errors and Appeals, 70 N. J. Eq. 695, and the case then was brought here.

The courts below assumed or decided and we shall assume that the defendant represents the rights of a riparian proprietor, and on the other hand, that it represents no special chartered powers that give it greater rights than those. On these assumptions the Court of Errors and Appeals pointed out that a riparian proprietor has no right to divert waters for more than a reasonable distance from the body of the stream or for other than the well-known ordinary uses, and that for any purpose anywhere he is narrowly limited in amount. It went on to infer that his only right in the body of the stream is to have the flow continue, and that there is a residuum of public ownership in the State. It reinforced the State's rights by the State's title to the bed of the stream where flowed by the tide, and concluded from the foregoing and other considerations that, as against the rights of riparian owners merely as such, the State was warranted in prohibiting the acquisition of the title to water on a larger scale.

We will not say that the considerations that we have stated do not warrant the conclusion reached; and we shall not attempt to revise the opinion of the local court upon the local law, if, for the purpose of decision, we accept the argument of the plaintiff in error that it is open to revision when constitutional rights are set up. Neither shall we consider whether such a statute as the one before us might not be upheld, even if the lower riparian proprietors collectively were the absolute

owners of the stream, on the ground that it authorized a suit by the State in their interest where it does not appear that they all have released their rights. See *Kansas* v. *Colorado*, 185 U. S. 125, 142. But we prefer to put the authority which cannot be denied to the State upon a broader ground than that which was emphasized below, since in our opinion it is independent of the more or less attenuated residuum of title that the State may be said to possess.

.All rights tend to declare themselves absolute to their logical extreme. Yet all in fact are limited by the neighborhood of principles of policy which are other than those on which the particular right is founded, and which become strong enough to hold their own when a certain point is reached. The limits set to property by other public interests present themselves as a branch of what is called the police power of the State. The boundary at which the conflicting interests balance cannot be determined by any general formula in advance, but points in the line, or helping to establish it, are fixed by decisions that this or that concrete case falls on the nearer or farther side. For instance, the police power may limit the height of buildings, in a city, without compensation. To that extent it cuts down what otherwise would be the rights of property. But if it should attempt to limit the height so far as to make an ordinary building lot wholly useless, the rights of property would prevail over the other public interest, and the police power would fail. To set such a limit would need compensation and the power of eminent domain.

It sometimes is difficult to fix boundary stones between the private right of property and the police power when, as in the case at bar, we know of few decisions that are very much in point. But it is recognized that the State as *quasi*-sovereign and representative of the interests of the public has a standing in court to protect the atmosphere, the water and the forests within its territory, irrespective of the assent or dissent of the private owners of the land most immediately concerned. *Kansas* v. *Colorado*, 185 U. S. 125, 141, 142; *S. C.*, 206 U. S.

46, 99; *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230, 238. What it may protect by suit in this court from interference in the name of property outside of the State's jurisdiction, one would think that it could protect by statute from interference in the same name within. On this principle of public interest and the police power, and not merely as the inheritor of a royal prerogative, the State may make laws for the preservation of game, which seems a stronger case. *Geer* v. *Connecticut*, 161 U. S. 519, 534.

The problems of irrigation have no place here. Leaving them on one side, it appears to us that few public interests are more obvious, indisputable and independent of particular theory than the interest of the public of a State to maintain the rivers that are wholly within it substantially undiminished, except by such drafts upon them as the guardian of the public welfare may permit for the purpose of turning them to a more perfect use. This public interest is omnipresent wherever there is a State, and grows more pressing as population grows. It is fundamental, and we are of opinion that the private property of riparian proprietors cannot be supposed to have deeper roots. Whether it be said that such an interest justifies the cutting down by statute, without compensation, in the exercise of the police power, of what otherwise would be private rights of property, or that apart from statute those rights do not go to the height of what the defendant seeks to do, the result is the same. But we agree with the New Jersey courts, and think it quite beyond any rational view of riparian rights that an agreement, of no matter what private owners, could sanction the diversion of an important stream outside the boundaries of the State in which it flows. The private right to appropriate is subject not only to the rights of lower owners but to the initial limitation that it may not substantially diminish one of the great foundations of public welfare and health.

We are of opinion, further, that the constitutional power of the State to insist that its natural advantages shall remain

unimpaired by its citizens is not dependent upon any nice estimate of the extent of present use or speculation as to future needs. The legal conception of the necessary is apt to be confined to somewhat rudimentary wants, and there are benefits from a great river that might escape a lawyer's view. But the State is not required to submit even to an aesthetic analysis. Any analysis may be inadequate. It finds itself in possession of what all admit to be a great public good, and what it has it may keep and give no one a reason for its will.

The defense under the Fourteenth Amendment is disposed of by what we have said. That under Article I, § 10, needs but a few words more. One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter. *Knoxville Water Co.* v. *Knoxville,* 189 U. S. 434, 438; *Manigault* v. *Springs,* 199 U. S. 473, 480. But the contract, the execution of which is sought to be prevented here, was illegal when it was made.

The other defenses also may receive short answers. A man cannot acquire a right to property by his desire to use it in commerce among the States. Neither can he enlarge his otherwise limited and qualified right to the same end. The case is covered in this respect by *Geer* v. *Connecticut,* 161 U. S. 519, and the same decision disposes of the argument that the New Jersey law denies equal privileges to the citizens of New York. It constantly is necessary to reconcile and to adjust different constitutional principles, each of which would be entitled to possession of the disputed ground but for the presence of the others, as we already have said that it is necessary to reconcile and to adjust different principles of the common law. See *Asbell* v. *Kansas, ante,* p. 251. The right to receive water from a river through pipes is subject to territorial limits by nature, and those limits may be fixed by the State within which the river flows, even if they are made to coincide with the state line. Within the boundary citizens of New York are as free

to purchase as citizens of New Jersey. But this question does not concern the defendant, which is a New Jersey corporation. There is nothing else that needs mention. We are of opinion that the decision of the Court of Errors and Appeals was right.

*Decree affirmed.*

MR. JUSTICE MCKENNA dissents.