ATLANTIC OCEANIC KAMPGROUNDS, INC.

v.

CAMDEN NATIONAL BANK.

Supreme Judicial Court of Maine.

Argued Nov. 7, 1983.

Decided April 5, 1984.

Susan Thiem (orally), Lincolnville, James W. Strong, Rockland, for plaintiff.

Eaton, Peabody, Bradford & Veague, P.A., Thomas M. Brown (orally), Bangor, for defendant.

Before McKUSICK, C.J., ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

Plaintiff Atlantic Oceanic Kampgrounds, Inc., appeals from an order of the Superior Court (Knox County) dismissing its complaint for failure to state a claim. Plaintiff contends that the complaint stated a claim against defendant, as mortgagee, seeking an accounting for the proceeds from a sale of mortgaged real estate following strict mortgage foreclosure and the recovery of any surplus resulting from that sale. We conclude that the Superior Court did not err in holding that plaintiff did not state a cause of action and we deny the appeal.

The allegations in plaintiff's complaint may be summarized as follows: On October 13, 1972, plaintiff executed a promissory note in the amount of $60,000.00 in favor of the defendant bank, securing the note by a mortgage on property located in Camden. On December 27, 1979 defendant commenced a strict foreclosure by serving plaintiff with notice of foreclosure pursuant to 14 M.R.S.A. § 6203(2) (1980). On August 5, 1981, after the expiration of the one year period of redemption provided in 14 M.R.S.A. § 6204 (1980), defendant sold the formerly mortgaged property to a third party and retained all proceeds from the sale. Defendant concedes that it received proceeds in excess of the amount secured and the costs of foreclosure.

On September 16, 1982 plaintiff brought this action seeking an accounting of the proceeds of the sale and recovery of the surplus. Plaintiff relies on 14 M.R.S.A. § 6204–A (1980),[1] enacted in 1975, as au-

---

1. Section 6204–A provides as follows:
   *Disposition of proceeds of foreclosure sale*
   The holder of a mortgage of real estate, or his representative, out of the money arising from a completed sale after the period of redemption has expired pursuant to a foreclosure under this subchapter, shall be entitled to retain all sums which were secured by the mortgage, whether then or thereafter payable, including all costs, charges or expenses incurred or sustained by him or them by reason of any default in the performance or observance of the condition of the mortgage or of any prior or subsequent mortgage, rendering the surplus, if any, to the mortgagor or his heirs, successors or assignes. (sic) The mortgagee shall also be entitled to deduct from the proceeds of the sale all costs incurred and interest at the rate provided in the note which was secured by the mortgage from the expiration of the redemption period to the date of sale. No person other than the

thority for the maintenance of its claim. Defendant moved to dismiss the complaint and the Superior Court ruled that plaintiff had failed to state a cause of action and entered judgment for the defendant. The court found that section 6204–A does not apply to strict foreclosure under section 6203(2). Alternatively, the court ruled that even if section 6204–A does apply, its retroactive application in this case would result in an unconstitutional impairment of the obligation of a contract. The parties focused on the constitutional issue in the briefs submitted to this Court but we hold that section 6204–A does not apply to strict foreclosure under section 6203(2) and therefore we have no occasion to address the constitutional issue.

■■■ The relevant portion of section 6204–A provides that the holder of a mortgage shall be entitled to retain the sum secured by the mortgage including costs "out of the money arising from a completed sale after the period of redemption has expired pursuant to a foreclosure under this subchapter," and shall render any surplus to the mortgagor. Subchapter III of c. 713 contains three methods of foreclosure that could be the object of the statutory reference: strict foreclosure by possession (14 M.R.S.A. § 6201 (1980 and Supp.1982–1983)), strict foreclosure without possession (14 M.R.S.A. § 6203 (1980)), and in the context of corporate mortgages only, foreclosure by exercise of the power of sale (14 M.R.S.A. § 6203–A (1980)).[2] Because the two forms of strict foreclosure do not involve a sale of the mortgaged premises as part of the procedure leading to extinguishment of the mortgagor's interest, an ambiguity arises as to the meaning of the statute. If the phrase "pursuant to a foreclosure under this subchapter" modifies "the

period of redemption" it could be argued that the legislature intended to include the sale of property subsequent to a strict foreclosure as well as foreclosure accomplished by sale. If, however, the qualifying phrase modifies "completed sale" it is beyond dispute that a sale following strict foreclosure is not a sale "pursuant to a foreclosure under this subchapter." We adopt this latter construction of the statute. Although the legislature is free to abrogate a longstanding rule of common law, such an intent is not to be presumed in the absence of clear and explicit language. *See* authorities cited in *Palmer v. Inhabitants of Town of Sumner,* 133 Me. 337, 340, 177 A. 711, 712–13 (1935). Under the circumstances presented in this case we cannot presume that the legislature intended to impose an obligation to account for surplus, without temporal limitation, from any sale of property acquired by strict foreclosure. Such a result would seriously impair the marketability of a substantial number of real estate titles and would be totally at odds with the common law.

Our view is supported by our decision in *Pierce v. Northeast Bank of Westbrook,* 381 A.2d 667 (Me.1978). In *Pierce* this Court sustained an appeal from an order granting summary judgment in favor of the defendant bank. Plaintiff's complaint alleged that after the defendant strictly foreclosed on her property, the bank used a portion of the "surplus" to pay off the debt of a third party. Plaintiff sought an accounting, a recovery of the surplus and punitive damages. We found the complaint to be ambiguous, necessitating an evidentiary hearing and precluding the granting of summary judgment. The ambiguity resulted from plaintiff's allegation that a "surplus" could arise from the mortgagee's sale of property acquired by strict foreclosure. We held

---

holder of the mortgage shall be bound to see to the application of the money arising from such sale nor submit an account relating to same and in the absence of fraud the consideration received by the mortgagee or his representative shall be deemed to be adequate consideration and the mortgagor shall have no claim that the sale price was inadequate.

2. Compare foreclosure through civil action under subchapter IV of c. 713 which anticipates a public sale of the mortgaged property and requires that any surplus be paid to the mortgagor. 14 M.R.S.A. §§ 6323, 6324 (Supp.1982–1983).

that once strict foreclosure was effected there was no "surplus" for which the mortgagee would be obliged to account:

> Had the bank effectively completed its foreclosure by virtue of the expiration of one year without redemption of the mortgaged property, under the strict foreclosure law of Maine which was then in effect defendant bank would have acquired title to the real estate; any subsequent sale would be a sale of property which had become absolutely owned by the bank. *Martel v. Bearce,* Me., 311 A.2d 540 (1973); *Smith v. Varney,* Me., 309 A.2d 229 (1973). ... Had defendant bank effected a strict foreclosure, there was no need of a sale to produce "proceeds" to be applied in payment of plaintiff's indebtedness; hence, there would be no "surplus" for which the bank would be obliged to account to plaintiff. See: *City of Auburn v. Mandarelli,* Me., 320 A.2d 22 (1974).

381 A.2d at 669. We concluded, however, that plaintiff's complaint could be construed to allege a "waiver" of strict foreclosure by the bank and the assumption of a duty to turn over a "surplus" to the plaintiff. We thus sustained the plaintiff's appeal in *Pierce.*

On this appeal we are compelled by the reasoning of *Pierce* and the authority cited therein to hold that this defendant acquired title to the property on December 27, 1980 when its foreclosure was completed by the expiration of the one year period of redemption. Defendant was under no duty to generate proceeds by offering the property for sale. The defendant's subsequent sale of the property to a third party on August 5, 1981 was not a sale pursuant to a foreclosure and did not give rise to any "surplus" contemplated by section 6204–A. We recognize that *Pierce* did not squarely raise the issue whether section 6204–A applies to strict foreclosure proceedings initiated *after* the effective date of the statute. We are persuaded, however, that the statute does not create a cause of action for an accounting and recovery of surplus when foreclosure is completed pursuant to section 6203(2).

The entry must be:

Judgment affirmed.

McKUSICK, C.J., SCOLNIK, J., and DUFRESNE, A.R.J., concurring.

GLASSMAN, Justice, with whom ROBERTS, J., joins, concurring.

I cannot join in the analysis the majority employs in holding 14 M.R.S.A. § 6204–A does not oblige a holder of a real estate mortgage to render the surplus from a post-foreclosure sale of the mortgaged property to the mortgagor or his heirs, successors, or assignees. Because, however, application of section 6204–A in the instant case would constitute an unconstitutional impairment of the mortgage contract before us, I concur in the majority's result.

Repeatedly, this court has unequivocally declared that the plain meaning of a statute as manifested on its face will control its interpretation. *See, e.g., Soucy v. Board of Trustees of the Maine State Retirement System,* 456 A.2d 1279, 1281 (Me.1983); *Opinion of the Justices,* 460 A.2d 1341, 1345 (Me.1982); *Coffin v. Rich,* 45 Me. 507, 511 (1858). This fundamental tenet of statutory construction represents an important constraint on the power of the judiciary. If the courts were to construe statutes in a manner inconsistent with plain meaning, they would in effect act as a law making rather than interpretive body, and therefore, usurp the legislative function.

14 M.R.S.A. § 6204–A, enacted by the Legislature in 1975, provides, in pertinent portion:

> The holder of a mortgage of real estate, or his representative, out of the money arising *from a completed sale after the period of redemption has expired pursuant to a foreclosure under this subchapter,* shall be entitled to retain all sums which were secured by the mortgage, whether then or thereafter payable, including all costs, charges or expenses incurred or sustained by him or them by

reason of any default in the performance or observance of the condition of the mortgage or of any prior or subsequent mortgage, *rendering the surplus, if any, to the mortgagor or his heirs, successors or assignes.* [sic] (emphasis added). According the express terms of this statute their plain and common meaning, it is clear the statute is applicable to *all* methods of foreclosure under 14 M.R.S.A. chapter 713, subchapter III. Subchapter III delineates three methods of foreclosure—foreclosure by possession, 14 M.R.S.A. § 6201, foreclosure without possession, 14 M.R.S.A. § 6203, and foreclosure pursuant to a power of sale of a mortgage given by a corporate mortgagor, 14 M.R.S.A. § 6203–A. Of these three methods, only the latter requires a sale of the mortgaged premises to effectuate a foreclosure. *See* 14 M.R.S.A. § 6203–A. The other two methods are of the common law "strict" type, wherein if the mortgagor fails to redeem the property within one year[1] after default, and the mortgagee has followed certain statutory procedures, the mortgagor's interest in the property is forever extinguished, and title to the property, both legal and equitable, vests absolutely in the mortgagee. *See Warner Brothers Co. v. Freud,* 138 Cal. 651, 72 P. 345 (1903); *Lightcap v. Bradley,* 186 Ill. 510, 58 N.E. 221 (1900). *See generally* G. Osborne, *Handbook on the Law of Mortgages* § 10, at 20–21, § 311–13, at 648–56 (2d ed. 1970); Note, *Strict Foreclosure: A Neglected Remedy,* 25 Va.L.Rev. 947, *passim* (1939). In a strict foreclosure proceeding, the law does not require the mortgagee, now legal and equitable title holder, to sell the property to effectuate foreclosure. The mortgagee is free to do with the property as he wishes.

When, however, a mortgagee in whom absolute title has vested under the provisions of 14 M.R.S.A. ch. 713, subchapter III elects to sell the mortgaged property, he is not entitled to retain all proceeds from the sale. Rather, pursuant to the clear mandate of 14 M.R.S.A. § 6204–A, he may retain only those sums which were secured by the mortgage, plus all reasonable costs, charges and expenses occasioned by reason of the default in the condition of the mortgage.[2]

To the extent section 6204–A requires the mortgagee to render the surplus from a sale of property upon which a mortgage has been foreclosed by possession or without possession, *see* 14 M.R.S.A. §§ 6201, 6203, it represents a significant departure from the common law doctrine of strict foreclosure. The Legislature is not to be lightly presumed to modify or abrogate a longstanding rule of common law. *See* authorities cited in *Palmer v. Inhabitants of Town of Sumner,* 133 Me. 337, 340, 177 A. 711, 712–13 (1935). Interpreting a statute as modifying the common law is proper, however, when the language of the statute in question is clear. *Id.,* 177 A. at 712–13. 14 M.R.S.A. § 6204–A falls within this category.

Moreover, it is important to note that construing section 6204–A in a manner consistent with its plain meaning works an equitable result. *See New England Tele-*

---

1. 14 M.R.S.A. §§ 6202 and 6204 provide the mortgagor one year in which to redeem the mortgaged property after the mortgagor has defaulted and the mortgagee has taken appropriate statutory procedures.

2. Section 6204–A is titled, "Disposition of proceeds of foreclosure sale." It might thus be argued that section 6204–A applies only to proceeds emanating from a sale necessary to effectuate foreclosure, *i.e.,* foreclosure pursuant to a power of sale, 14 M.R.S.A. § 6203–A. The unambiguous language of a statute, however, and not its title, governs its construction. *See,*

*e.g., American Sav. & Loan Ass'n v. Enfield,* 261 Ark. 796, 551 S.W.2d 552 (1977); *State v. Ellenberger,* 96 N.M. 287, 629 P.2d 1216 (1981). The body of section 6204–A suggests no such limitation. On the contrary, the statute is clearly applicable to *all* methods of foreclosure delineated in 14 M.R.S.A. ch. 713, subchapter III. Moreover, 14 M.R.S.A. § 6203–A, foreclosure by power of sale, enacted prior to section 6204–A, already provides for rendering of surplus to the mortgagor. If section 6204–A was intended to apply only to section 6203–A, it would be redundant and unnecessary.

*phone and Telegraph Co. v. PUC,* 376 A.2d 448, 453 (Me.1977) (strict letter of statute may be disregarded to avoid absurd results); *accord Schwanda v. Bonney,* 418 A.2d 163 (Me.1980). Although the intent of the Legislature in enacting section 6204–A cannot be discerned from examining the legislative record, it is entirely fair to assume the Legislature regarded strict foreclosure as working an unjust and inequitable result, namely, the forfeiture of the excess of the value of the land over the amount of debt remaining. It is noteworthy that the majority of sister jurisdictions do not recognize strict foreclosure. *See* Osborne, *supra* § 312, at 650–51 (strict foreclosure commonly allowed in only three jurisdictions).[3]

Having determined that section 6204–A requires a mortgagee to render to the mortgagor the surplus after costs from the post-foreclosure sale of mortgaged property under all methods of foreclosure contained in 14 M.R.S.A. ch. 713, subchapter III,[4] it is necessary to consider whether the statute in question is applicable to mortgages executed prior to 1975, the year of the enactment of section 6204–A, and foreclosed subsequent thereto.

Article I, section 11 of the Maine Declaration of Rights, and article 1, section 10 of the United States Constitution are similar in structure and scope. These constitutional provisions, read literally, prohibit state legislatures from enacting any law that impairs the obligation of contract. Traditionally, we have, consistent with United States Supreme Court doctrine, drawn a distinction between statutes which affect contract rights and those which affect remedies. As a general rule, the bar against legislation affecting existing contracts does not apply when the statute affects only the remedy of enforcement involved. *See, e.g., Thut v. Grant,* 281 A.2d 1, 6 (Me.1971) (quoting *Miller v. Fallon,* 134 Me. 145, 147, 183 A. 416, 417 (1936)); *Oriental Bank v. Freese,* 18 Me. 109, 111 (1841); *cf. Portland Savings Bank v. Landry,* 372 A.2d 573 (Me.1977) (because statute reducing period of redemption for mortgage lessens value of contract to parties, constitutional prohibition against law impairing obligation of contract violated).

Recently, however, the United States Supreme Court enunciated a standard which suggests the traditional rights/remedies distinction is no longer the critical inquiry when determining whether a statute enacted pursuant to the police power unconstitutionally impairs existing contractual obligations. In *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* —— U.S. ——, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), the Supreme Court declared, "Although the language of the Contract Clause is facially absolute, the prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'"[5] *Id.* at ——, 103 S.Ct. at 704, 74 L.Ed.2d at 580 (quoting in part *Home Building & Loan Association v. Blaisdell,*

---

3. Illinois has taken an analogous approach to ameliorating the harshness of the strict foreclosure proceeding. Pursuant to Illinois law, in order for strict foreclosure to be employed, the premises must not be worth more than the debt plus interest and costs, the mortgagee must be willing to take the property in full satisfaction of the debt, and the mortgagor must be insolvent. *See Rabbit v. First Nat'l Bank of Rock Falls,* 237 Ill.App. 289 (1925); *Barnes v. Ward,* 190 Ill.App. 392 (1914); *Griesbaum v. Baum,* 18 Ill.App. 614 (1886).

4. The majority's reliance on *Pierce v. Northeast Bank of Westbrook,* 381 A.2d 667 (Me.1978), as supportive of its holding, is misplaced. The mortgage in question in *Pierce* was executed

and foreclosed prior to the Legislature's enactment of 14 M.R.S.A. § 6204–A. *Pierce* merely restated the common law rule of strict foreclosure, *i.e.,* upon strict foreclosure, title vests absolutely in the mortgagee and the mortgagor's interest in the property is extinguished. As discussed previously, in enacting section 6204–A, the Legislature modified the common law of strict foreclosure in this very regard.

5. We have previously held that the freedom to contract is itself necessarily subject to reasonable police power measures intended to promote the welfare of citizens. *National Hearing Aid Centers, Inc. v. Smith,* 376 A.2d 456, 461 (Me. 1977).

290 U.S. 398, 434, 54 S.Ct. 231, 78 L.Ed. 413 (1934)). The Court then stated:

The threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." (citations omitted). The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected. (citations omitted). Total destruction of contractual expectations is not necessary for a finding of substantial impairment. *United States Trust Co.* [*v. State of New Jersey,*] 431 US [1,] at 26–27, 52 L Ed 2d 92, 97 S Ct 1505 [1519–1520.] On the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment. *Id.,* at 31, 52 L Ed 2d 92, 97 S Ct 1505 [at 1522] citing *El Paso v. Simmons,* 379 US 497, 515, 13 L Ed 2d 446, 85 S Ct 577 (1965). In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past. (citations omitted). The Court long ago observed: "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." *Hudson Water Co. v. McCarter,* 209 US 349, 357, 52 L Ed 828, 28 S Ct 529 [531] (1908).

*Id.* at ——, 103 S.Ct. at 704–05, 74 L.Ed.2d at 580–81. The Court declared that if the state regulation amounts to a substantial impairment, it must have a significant and legitimate public purpose. *Id.* at ——, 103 S.Ct. at 705, 74 L.Ed.2d at 581. The Court noted that the elimination of unforeseen windfall profits is one such legitimate state interest. *Id.* Finally, the Court stated that "[o]nce a legitimate public purpose has been identified, the next inquiry is whether the adjustment of 'the rights and responsibilities of [the] contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose

justifying [the legislation's] adoption.' " *Id.* (quoting in part *United States Trust Company of New York v. New Jersey,* 431 U.S. 1, 22, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977)).

Applying this analysis to the instant case, I would hold 14 M.R.S.A. § 6204–A inapplicable to mortgages executed prior to 1975 and foreclosed thereafter. At least since 1841, strict foreclosure has been part of the law of mortgages in Maine. *See* R.S. ch. 125, § 3 (1841). Therefore, a mortgagee has long been able to expect rightfully that all proceeds from the sale of property upon which the mortgage has been foreclosed could be retained without an accounting. *See Portland Savings Bank v. Landry,* 372 A.2d at 575 (law in effect when contract is executed becomes part of that contract); *accord Phinney v. Phinney,* 81 Me. 450, 460, 17 A. 405, 407 (1889). The right to retain such proceeds must be regarded as an essential incident of the pre-section 6204–A mortgage, which helped make the contract valuable. *See Barton v. Conley,* 119 Me. 581, 585, 112 A. 670, 672 (1921) (where statute lessens value of contract to party, constitutional prohibition against contract impairment implicated). When in 1975, the Legislature enacted 14 M.R.S.A. § 6204–A, it altered drastically the very nature of strict foreclosure in Maine. To apply this law retroactively would substantially impair those mortgage contracts entered into prior to the effective date of section 6204–A.

Having determined that the degree of contractual impairment is substantial, it is necessary under *Energy Reserves* to examine the countervailing interest of the public protected by the legislation, and weigh it against the degree of contractual impairment. The Legislature, in enacting section 6204–A, sought to ameliorate the harsh effects on property owners of common law strict foreclosure, and in so doing, served a legitimate and reasonable governmental purpose.[6] This purpose, however, is not of sufficient importance to justify impairing

---

**6.** The law has long disfavored interpretations which permit a forfeiture. *See C Co. v. City of* *Westbrook,* 269 A.2d 307, 309 (Me.1970).

the mortgage contract in the manner which would result from applying section 6204–A retrospectively. Section 6204–A cannot be said to be inimical to the welfare of the citizens of Maine at large. Rather, this statute was designed to ease the harsh effects of strict foreclosure on a certain body of individuals—property owners who have given a mortgage on their property. The limited remedial breadth of section 6204–A does not justify the impairment of contract which would ensue from its retrospective application.[7]

Additionally, I deem significant the Legislature's failure specifically to provide for retroactive application of section 6204–A. We have long held that absent express command or convincing implication, statutes will be given prospective application only. *See Terry v. St. Regis Paper Co.,* 459 A.2d 1106, 1109 (Me.1983); *Miller v. Fallon,* 134 Me. 145, 148, 183 A. 416, 417 (1936).

---

7. The instant case differs significantly from *Energy Reserves Group v. Kansas Power and Light Co.,* —— U.S. ——, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), in which the Supreme Court allowed retrospective application of a state statute regulating the price of natural gas. The *Energy Reserves* Court reasoned that the contract clause was not violated because, among other reasons, the complaining party was operating in a heavily regulated industry in which state authority to regulate gas prices was well established. *Id.* at ——, 103 S.Ct. 706, 74 L.Ed.2d 569 at 582. Therefore, the change in law in *Energy Reserves* was, or should have been, reasonably anticipated. The opposite is true in the instant case, where the statute involved changed well over 100 years of law. Additionally, we regard the public purpose served by the statute in question in *Energy Reserves* to be more compelling than that in the instant case.