**ROLEC, INC., Plaintiff,**

v.

**FINLAY HYDRASCREEN USA, INC., Defendant.**

**Civil No. 95–203–P–H.**

United States District Court, D. Maine.

Feb. 21, 1996.

John S. Campbell, Poulos & Campbell, Portland, ME, for Plaintiff.

Jerrol M. Crouter, Deirdre M. Smith, Drummond, Woodson & MacMahon, Portland, ME, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS COUNT II

HORNBY, District Judge.

The issue in this case is whether Maine's recently enacted Franchise Laws for Power Equipment, Machinery and Appliances can constitutionally be applied to a franchise agreement already in effect before the law was enacted. I conclude that applying the law retroactively in this case would be unconstitutional. I therefore **GRANT** the motion to dismiss Count II.

### BACKGROUND

I read the complaint in the light most favorable to the plaintiff. The defendant Finlay Hydrascreen USA, Inc. ("Finlay") granted a franchise to the plaintiff Rolec, Inc. ("Rolec") in 1986 to be the exclusive dealer of Finlay products in Maine, Vermont

and New Hampshire. These products are mobile screening plants used to separate rocks, sand and other materials at quarries. The parties renewed the franchise agreement in February of 1993. The agreement explicitly provided that Maine law would govern. On June 3, 1993, the Maine Legislature enacted a statute to govern franchising arrangements for the sale of power equipment like that sold under the Finlay/Rolec franchise agreement. The effective date of the new statute was October 13, 1993. On July 19, 1993, Finlay wrote Rolec that it was terminating the franchise. Rolec objected late in August. In September and early November, Finlay indicated second thoughts, but finally terminated the franchise on November 22, 1993. Rolec has now brought this civil lawsuit claiming breach of the parties' franchise agreement in Count I and a violation of the 1993 franchise statute in Count II. Finlay has moved to dismiss Count II.

Power equipment, machinery and appliances were not covered by Maine franchise law or regulations before 1993. The legislation came into existence when the Legislature first considered regulating snowmobile dealers, then, in committee, enlarged the scope of coverage of the bill to all power equipment, machinery and appliances. As enacted, the law prohibits termination of a franchise agreement or refusal to renew an agreement unless there is good cause. 10 M.R.S.A. § 1363(3)(B). Prior notice of termination or nonrenewal is also required, together with a six-month opportunity for the franchisee to make good-faith efforts to improve its performance. § 1363(3)(C)(2)(a). In contrast, the Finlay/Rolec agreement as drafted by the parties provided that it could "be terminated, without cause, at any time upon ninety (90) days' written notice of termination." Otherwise, it had an automatic annual renewal provision so long as the dealer (Rolec) had "faithfully observed and performed all its obligations." The agreement also had a separate termination and default provision providing for termination after fifteen days' notice for specific listed defaults by the dealer.

## ANALYSIS

The Maine statute does not explicitly address the question whether it is to be applied to franchise agreements already in existence when it became effective or only to franchise agreements entered into after its effective date. I will assume that in enacting this comprehensive franchise law the Legislature intended it to apply universally upon its effective date, particularly because the statute states that any contract or activity undertaken pursuant to any contract "in violation of this chapter is deemed against public policy." 10 M.R.S.A. § 1368. *See Sinclair v. Sinclair*, 654 A.2d 438, 440 (Me.1995) (retroactivity is determined by legislative purpose).

I turn therefore to Finlay's argument that this so-called retroactive application of the statute is an unconstitutional impairment of the obligation of contracts contrary to Article I, Section 10, Clause 1 of the United States Constitution. It is true that two previous decisions of this court have dealt with the retroactive application of franchise laws to franchise agreements already in effect. Both cases found the retroactive application to be constitutional. *See Acadia Motors, Inc. v. Ford Motor Co.*, 844 F.Supp. 819 (D.Me. 1994), *rev'd in part on other grounds*, 44 F.3d 1050 (1st Cir.1995); *N.A. Burkitt, Inc. v. J.I. Case Co.*, 597 F.Supp. 1086 (D.Me. 1984). Both of those cases, however, involved industries that were already subject to extensive franchise regulation, and the issue before the court was whether an amendment to the existing franchise law could be constitutionally applied retroactively.[1] In this case, by contrast, there was no previous franchise regulation of this industry at all; this statute is the Legislature's first

---

1. Some of the contracts in *Acadia Motors* were entered into before even the first franchise law enactment for automobile dealers and, as to those, the court recognized a "substantial impairment." 844 F.Supp. at 827. Franchise regulation for automobile dealers, however, is well known and obviously affects a wide consuming public. Not surprisingly, there was a much greater statement of need and concern for franchise laws affecting motor dealers reflected in the legislative history than in the case of the power equipment law at issue here. *Id.* at 827–28.

intrusion into the area. Consequently, it is necessary to return to first principles for the analysis.

█ The Supreme Court case that controls the analysis under the Contracts Clause is *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). Under *Energy Reserves,* there are three issues: (1) Does the state law amount to "a substantial impairment of a contractual relationship"?; (2) Does the state have "a significant and legitimate public purpose behind the regulation"?; and (3) Is the change in the contractual relationship "based upon reasonable conditions and ... of a character appropriate to the public purpose justifying [the legislation's] adoption"? *Id.* at 411–12, 103 S.Ct. at 704–05 (alteration in original).

█ Under (1), the new franchise law for power equipment does amount to a substantial impairment of a contractual relationship. This is an industry that had not previously been regulated. *See N.A. Burkitt,* 597 F.Supp. at 1091 (previous regulation is a "major factor" to consider); *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704. In the particular contract between these parties, they had voluntarily structured an arrangement by which either party could leave the agreement for no reason upon ninety days' notice, and the franchisor could terminate the agreement for one of a list of reasons upon fifteen days' notice. Otherwise, the agreement automatically renewed ad infinitum. To void these withdrawal options, as the Legislature has done here, is to make a significant change to the economic relationship between the parties that will affect the analysis of issues (2) and (3). *See Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704 ("the severity of the impairment ... increase[s] the level of scrutiny to which the legislation will be subjected"). The franchisor suddenly finds itself in a virtually permanent relationship from which it cannot extricate itself without surmounting significant hurdles, contrary to the economic relationship the parties had established voluntarily before the statute.

Under (2), I am doubtful that the state had a significant and legitimate public purpose for its retroactive regulation.[2] The Legislature may have concluded that Maine franchisees had insufficient bargaining power to obtain appropriate terms and conditions in their agreements. (I say "may have" because the legislative history does not exactly reveal the purpose for including power equipment. The bill as introduced applied only to snowmobiles, and its statement of fact revealed that its purpose was to put snowmobile dealers in the same position as other motor vehicle dealers. The committee amendment that broadened the legislation to its current scope simply stated that the original bill had added snowmobiles and that the amendment "creates a franchise law for any electric or gasoline-powered equipment, machinery or appliance except motor vehicles." L.D. No. 364, 116th Me.Leg., 1st Sess., Comm.Amend. A at 7 (1993).) There is no suggestion, however, why existing agreements had to be legislatively amended retroactively.

The final inquiry is whether the alteration is based upon reasonable conditions and of a character appropriate to the public purpose. I conclude that even applying a deferential standard of review, the retroactive aspect of the legislation here does not meet that test for agreements already in existence like the one between Finlay and Rolec. The legislature could easily have fulfilled all its objectives by applying this new law to new franchise agreements in this previously unregulated area, but allowing a grace period—for example, six months—for existing franchise agreements to be terminated, failing which they would be subject to the new law. To impose the new requirement on every existing agreement with no opportunity for one of the parties first to withdraw is not "based upon reasonable conditions" and not "of a character appropriate to the public purpose." *Energy Reserves,* 459 U.S. at 412, 103 S.Ct. at 705; *see also Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dept. of Pub. Welfare,* 742 F.2d 442, 451 (8th Cir.1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). I therefore find the

**2.** I invited the Attorney General of the State of Maine to intervene to defend the constitutionality of the legislation, but the Attorney General declined the invitation.

retroactive application of the statute to be unconstitutional. *Accord, Holiday Inns Franchising, Inc. v. Branstad,* 29 F.3d 383 (8th Cir.1994), *aff'g McDonalds Corp. v. Nelson,* 822 F.Supp. 597 (S.D.Iowa 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994); *Northshore Cycles, Inc. v. Yamaha Motor Corp. USA,* 919 F.2d 1041 (5th Cir.1990); *Morgan v. Kemper Ins. Cos.,* 754 F.2d 145 (4th Cir.1985). The motion to dismiss Count II is therefore GRANTED.

SO ORDERED.